UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM P. BAK, as son and next best friend of JOSEPHINE BAK, his mother,

Plaintiff,

v.

**DECISION AND ORDER**
13-CV-215S

NIAGARA REHABILITATION and NURSING CENTER;
THOMAS J. CASERTA, JR., ESQ., solely in his capacity as Guardian of Josephine Bak by appointment under Article 81 of the New York Mental Hygiene Law;
ARTHUR E. JACKSON, JR., ESQ., solely in his capacity as Temporary Guardian of Josephine Bak by appointment under Article 81 of the New York Mental Hygiene Law;
CITY OF NIAGARA FALLS; and
COUNTY OF NIAGARA;

Defendants.

---

## I. INTRODUCTION

Plaintiff William Bak commenced this action on February 27, 2013, alleging that his mother, Josephine Bak ("JB"), was subjected to an unconstitutional seizure, and deprived of her liberty without due process, when she was taken involuntarily from their residence and placed in a nursing home.

On May 1, 2013, Defendants County of Niagara, Arthur Jackson, Esq., and Niagara Rehabilitation and Nursing Center ("NRNC") each moved to dismiss the claims against

them,[1] under Rules 12(b)(1) and (b)(6), for lack of subject matter jurisdiction and failure to state a claim for relief. The motions are fully briefed and the Court has determined that oral argument is not necessary. For the reasons stated below, the motions are granted.

## II. BACKGROUND

### A. The Facts

The following facts are accepted as true for purposes of resolving the pending motions. They are drawn from the Complaint and the attachments thereto, which consist entirely of documents filed in a state court proceeding and of which this Court takes judicial notice.

When this action was filed, JB was 96 years old. By the year 2009, JB's physical and mental faculties had diminished such that she required substantial assistance to meet basic daily needs. JB owns her own home and resided there with two adult children, Plaintiff and his sister, until September 20, 2010.

Early in 2010, Defendant Niagara County's Department of Social Services received a referral to investigate JB's living arrangements and determine if she was at risk of harm. Employees of Niagara County's Department of Social Services ("DSS") visited and inspected JB's household. Thereafter, the County commenced a proceeding in New York State Supreme Court, under Article 81 of the Mental Hygiene Law, seeking appointment of a permanent guardian for JB. The Honorable Frank Caruso, J.S.C., signed an Order to Show Cause on March 15, 2010 which, *inter alia*, appointed Defendant Jackson as

---

[1] Defendant Thomas Caserta filed an Answer on July 24, 2013. A Summons returned executed, filed on March 13, 2013, indicates that the City of Niagara Falls was served on March 6, 2013. The City has not yet entered an appearance.

temporary guardian for JB, and Charles Ben, II, Esq. as attorney for JB, and set a return date of April 15, 2010. That date was later adjourned and ultimately rescheduled for December 10, 2010.

In initiating the guardianship proceeding, DSS took the position that JB required the presence of a caregiver at all times. Plaintiff and his sister were of the opinion that DSS's insistence on 24-hour care was unreasonable. When a DSS employee later visited the Bak residence, on September 20, 2010, JB was home alone in her bed. With assistance from the City of Niagara Falls Police Department, the DSS employee had JB transported to a hospital, where she remained for three days. On September 23, 2010, JB was transferred to Defendant NRNC, a nursing home.

JB's appointed attorney, Charles Ben, appeared in state court on the Order to Show Cause on December 10, 2010. Also present were temporary guardian Jackson, proposed permanent guardian Caserta, Plaintiff, his sister, and the attorney they retained to represent their interests. On January 7, 2011, Justice Caruso issued an order appointing Defendant Caserta JB's permanent guardian. That appointment remains in place.

JB has continued to reside at NRNC. According to Plaintiff, he visits JB almost daily, and on each occasion, JB tells him she is unhappy and wants to return home.

**B.  The Claims for Relief**

Though the Complaint does not set forth distinct causes of action, Plaintiff appears to claim that: Defendant Jackson did not have authority to place JB in a nursing home (Complaint ¶ 26), JB was denied due process in the Article 81 proceeding and, therefore, is aggrieved by Defendant Caserta's appointment (¶¶ 35-46, 57-59, 63), Defendants County and City violated the Fourth Amendment to the United States Constitution when

they removed JB from her residence (¶ 61), and Defendants County, NRNC, and Jackson violated JB's due process rights when they acted in concert to confine her to a nursing home without her consent (¶¶ 26, 62).[2] The Complaint seeks compensatory damages, and unspecified declaratory and injunctive relief.

Defendants maintain, variously, that: (1) the Court lacks subject matter jurisdiction because Plaintiff does not have standing to sue on JB's behalf and his claims are barred by the Rooker-Feldman doctrine; and, even assuming jurisdiction exists, (2) Younger abstention applies, Defendant County is immune from suit, and the Complaint does not state a cognizable claim for relief. These arguments will be considered to the extent necessary.

## III. DISCUSSION

### A. Standards of Review

#### 1. Rule 12(b)(1) Motion to Dismiss

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing the existence of federal jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Where, as here, the jurisdictional challenges are raised at the pleading stage, the court accepts as true all factual allegations in the complaint and draws all reasonable

[2] The Complaint also arguably alleges that Defendant NRNC retaliated against Plaintiff for making complaints to the New York State Department of Health about conditions at the facility (¶¶ 53-54), In his opposition to the pending motions, however, Plaintiff makes clear that the Complaint asserts claims only on his mother's behalf, and not in his individual capacity. (Docket No. 31-1 at 2.)

inferences in the plaintiff's favor. Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008). It is "presume[d] that general [fact] allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) (alterations added).

The court also may consider affidavits and other evidence outside the pleadings to resolve the jurisdictional issue, but it may not rely on conclusory or hearsay statements contained in affidavits. J.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004), *cert. denied*, 544 U.S. 968, 125 S. Ct. 1727, 161 L. Ed. 2d 616 (2005). "In assessing whether a plaintiff has sufficiently alleged or proffered evidence to support jurisdiction . . . , a district court must review the allegations in the complaint, the undisputed facts, if any, placed before it by the parties, and—if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue—resolve disputed issues of fact . . . ." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001).

    2.    Rule 12(b)(6) Motion to Dismiss

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See* Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its

face." Twombly, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in Ashcroft v. Iqbal, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The decision instructs district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (quoting and citing Twombly, 550 U.S. at 556-57 (internal citations omitted)).

**B. Standing to Sue**

Plaintiff initiated this action, not in his individual capacity, but "as son and next best friend" of his mother, JB. Defendants County of Niagara, Jackson, and NRNC each maintain that Plaintiff lacks standing to sue on his mother's behalf.

Standing is an essential component of the case or controversy requirement of Article III, section 2 of the United States Constitution. The Supreme Court has articulated the "irreducible constitutional minimum" for standing as follows: 1) the plaintiff must have suffered an "injury in fact;" 2) the injury must be fairly traceable to the defendant; and 3)

it must be "likely," rather than "speculative," that the injury will be redressable by the court. Defenders of Wildlife, 504 U.S. at 560-61; *see also*, Hein v. Freedom from Religion Found., Inc., 551 U.S.587, 598, 127 S. Ct. 2553, 168 L. Ed. 2d 424 (2007) (confirming well-established requisite elements of Article III standing). An “injury in fact” is “an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.” Defenders of Wildlife, 504 U.S. at 560 (internal citations, footnote and quotation marks omitted). These requirements "tend[ ] to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1981) (alteration added). The party invoking federal jurisdiction bears the burden of establishing its existence. Defenders of Wildlife, 504 at 561 (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990)).

The gravamen of the Complaint is that JB was placed in a nursing home against her wishes. (Docket No. 31 ¶ 4.) Thus, any alleged injury is specific to JB alone. See Ad Hoc Committee of Concerned Teachers v. Greenburgh #11 Union Free Sch. Dist., 873 F.2d 25, 28 (2d Cir. 1989) (plaintiff committee lacked standing where neither it nor any of its members alleged a cognizable injury sufficient to satisfy Article III’s case or controversy requirement). Plaintiff acknowledges that he “lacks standing to assert constitutional violations on behalf of his mother” (Docket Nos. 1 ¶ 37; 31-1 at 16), but suggests, in his response to Defendants motions, that he would have standing to bring a claim on his own behalf against the police who entered his mother’s home, where he also resided, without

first obtaining a search warrant.

At this juncture, Plaintiff presents a mere hypothetical. He makes no allegations in the Complaint on his own behalf, did not amend the Complaint as a matter of course under Rule 15(a)(1) of the Federal Rules of Civil Procedure, and has not properly moved for leave to amend under Federal Rule 15(a)(2) and Local Rule 15. As such, Plaintiff lacks standing to pursue the claims alleged in the Complaint, all of which are brought on his mother's behalf and allege injury to her alone.

**C. Rule 17(a)**

Plaintiff next urges that, because his mother lacks the capacity to sue on her own behalf, he should be permitted to bring suit as her "next friend" or guardian ad litem, under Rule 17(c) of the Federal Rules of Civil Procedure.

A minor or incompetent person normally lacks the capacity to bring suit for herself. See, e.g., N.Y. C.P.L.R. 1201 (McKinney 1997); Fed. R. Civ. P. 17(b)(1) (for individual not acting as representative, capacity to sue is determined by "the law of the individual's domicile"). Rule 17(c) provides that such an individual may bring suit by a general guardian, committee, conservator, or similar fiduciary, see Fed. R. Civ. P. 17(c)(1), or, if the individual does not have a duly appointed representative, by a next friend or guardian ad litem, Fed. R. Civ. P. 17(c)(2).

Defendants maintain that Rule 17(c)'s provisions are mutually exclusive and, because JB already has a court-appointed guardian, Plaintiff cannot represent her under Rule 17(c)(2). (Docket Nos. 21-5 at 3, 22-3 at 10, 34 at 3 This Court must disagree. It has long been recognized that federal courts have the "power to authorize someone other than a lawful representative to sue on behalf of an infant or incompetent *where that*

*representative is unable, unwilling or refuses to act or has interests which conflict with those of the infant or incompetent*." Ad Hoc Committee, 873 F.2d at 29-30 (collecting cases) (emphasis added); James v. State of New York, 415 Fed. Appx. 295, 297 (2d Cir. 2011). The Second Circuit instructs that courts must examine fact allegations and evidence regarding the authorized representative's conduct, and should also consider whether the "next friend" is motivated by a sincere desire to seek justice on the [incompetent person's] behalf" and has the ability to prosecute the action at hand. Ad Hoc Committee, 873 F.2d at 30-31.

Plaintiff does not allege that JB's permanent guardian, Attorney Caserta, was involved in any violation of JB's constitutional rights. Indeed, Caserta was appointed permanent guardian well after the alleged illegal seizure and placement in a nursing home without due process. Reading the Complaint liberally, Plaintiff alleges, at most, that JB was denied due process in the state court guardianship proceeding that concluded with Caserta's appointment. But Caserta himself is not alleged to have engaged in any actionable conduct in connection with that proceeding either.

What Plaintiff urges instead is that Caserta "was served but has not appeared in these proceedings [and] from that it may properly be inferred that he lacks an interest in pursuing the claims of [JB] on her behalf in his capacity as general guardian of her person and property." (Docket No. 31-1 at 14.) This purported inference is nothing more than a red herring. First, Caserta has since appeared in this action, by way of his Answer filed on July 24, 2013. As a named Defendant in this action, he has a presumed conflict of interest and is unable to appear as JB's representative. But the analysis does not end here; Plaintiff's motives also must be considered.

As foreshadowed above, the Court finds the Complaint does not state any cognizable claim against Caserta. In light of the dearth of allegations against him, it reasonably can be inferred that Plaintiff named Caserta as a defendant in this action for the sole purpose of creating a conflict of interest where none could otherwise be shown. Also telling, for purposes of this discussion, is the relief requested by Plaintiff. He does not seek any specific injunctive or declaratory relief with regard to JB's housing or care and well-being; he seeks only monetary relief on behalf of his 96 or 97-year-old mother, of whom he is likely a beneficiary. In discussing "next friend" motives, the Second Circuit expressly noted that it "would not sanction any attempt to assert the legitimate right of [an incompetent] as a mere pretext for advancing ulterior . . . economic aims." Ad Hoc Committee, 873 F.2d at 31.

Having fully considered the Complaint, the state court proceedings, and the parties' respective submissions and likely motivations, this Court cannot conclude that Caserta has any interest that conflicts with JB's or that he is otherwise unable or unwilling to safeguard JB's person and property. Moreover, the Court is not convinced that Plaintiff is motivated by a sincere desire to seek justice on JB's behalf. As such, the Court finds a "next friend" action or guardian ad litem appointment is unwarranted. Because Plaintiff will not be permitted to proceed as "next best friend" of JB, all claims against the moving and non-moving Defendants must be dismissed.

## IV. CONCLUSION

Defendants motions to dismiss are granted on the grounds that Plaintiff lacks standing to bring suit on his mother's behalf and he will not be permitted to sue under Rule

17(c)(2) as her "next best friend." In light of this holding, Defendants' further arguments for dismissal need not be addressed.

## V. ORDERS

IT HEREBY IS ORDERED that the Motions to Dismiss by Defendant County of Niagara (Docket No. 21), Arthur E. Jackson (Docket No. 22), and Niagara Rehabilitation and Nursing Center (Docket No. 23) are GRANTED;

FURTHER that this case is dismissed without prejudice;

FURTHER that the Clerk of Court shall take all steps necessary to close this case.

SO ORDERED

Dated: January 24, 2014
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court